UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

REDINNO L.S. VADEN,                :
    Plaintiff,                 :
                               :     Case No. 3:06cv00071 (JBA)
v.                                 :
                               :
LANTZ ET AL.,                      :
    Defendants.                :

## RULING ON DEFENDANTS' MOTION FOR A MORE DEFINITE STATEMENT [DOC. #14]

In response to plaintiff's Amended Complaint [Doc. #4], defendants filed a Motion for a More Definite Statement [Doc. #14] on July 5, 2006, to which no response has been filed, even though an extension of time for such purpose was requested and granted [Docs. ##16, 21]. For the reasons below, the Court DENIES defendants' motion.

### I. Background

Plaintiff Redinno L.S. Vaden filed his Amended Complaint, dated March 28, 2006, against the State of Connecticut Department of Corrections ("DOC"); Commissioner Theresa Lantz and Deputy Commissioner Brian Murphy; Wardens Robert Gillis, Walter Ford, and Lori Ricks; and Majors Robin Bourne, James Foley, and John Alves. Vaden alleges violation of his rights under the Fourteenth Amendment; 42 U.S.C. §§ 1981 and 1983; Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et. seq.; and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60(a)(1), arising out of his

1

employment as a correctional officer for the DOC, and seeks a
declaratory judgment pursuant to 28 U.S.C. § 2201.  (See Am.
Compl. at 17-23.)

According to his Amended Complaint, on August 10, 2001,
plaintiff, an African-American man, was hired by the DOC to work
at the Gates Correctional Institution.  (See id. ¶ 15.)  During
the course of his employment at Gates, he alleges that he was
subjected to racial slurs, physical harassment, racially
disparate evaluation and discipline, and retaliation (see, e.g.,
id. ¶¶ 17-26, 30-35, 38).  Plaintiff filed a discrimination
complaint with the Connecticut Commission on Human Rights and
Opportunities and with the Equal Employment Opportunity
Commission on March 19, 2003 (see id. ¶ 27); on March 20, 2003,
plaintiff was involuntarily transferred to the York Correctional
Institution, Niantic, Connecticut, which plaintiff found "a less
desirable post" (see id. ¶¶ 25, 37); and on November 28, 2003,
plaintiff was reassigned to Gates "despite the hostile work
environment existent there" (see id. ¶ 29).

## II. Standard

According to Fed. R. Civ. P. 8(a), a complaint must include
a "short and plain statement of the claim" and the grounds on
which the claim is based.  To satisfy the requirements of Rule
8(a), a complaint need only "give[] [the defendant] fair notice
of the basis for [the plaintiff]'s claims."  Swierkiewicz v.

2

<u>Sorema N.A.</u>, 534 U.S. 506, 514 (U.S. 2002).  A complaint need not be amended if it "contain[s] sufficient detail in terms of the actions, dates, and circumstances alleged, as well as the legal basis for plaintiff's claims, for defendant to be fairly apprised of the claims against it.  More is not required under the rules of notice pleading."  <u>Zuppe v. Elite Recovery Servs., Inc.</u>, No. 3:05cv857 (JBA), 2006 U.S. Dist. LEXIS 432, at *5 (D. Conn. Jan. 5, 2006).

Where a defendant cannot reasonably respond to a complaint because of the latter's vagueness or ambiguity, a court may grant the defendant's motion for more definite statement under Fed. R. Civ. P. 12(e).[1]  Such motions are generally disfavored, however, and are not intended to substitute for the "normal discovery process," <u>Allstate Ins. Co. v. Siegel</u>, 312 F. Supp. 2d 260, 277 (D. Conn. 2004); <u>see also</u> <u>Wallett v. Anderson</u>, No. 00cv0053, 2000 U.S. Dist. LEXIS 20995, at *12 (D. Conn. Dec. 1, 2000).  "The preferred course is to encourage the use of discovery to inform the defendant of the factual basis of the complaint."  <u>Monaco v.</u>

---

[1]      If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading.  The motion shall point out the defects complained of and the details desired. . . .

Fed. R. Civ. P. 12(e).

3

<u>Carpinello</u>, No. CV-98-3386 (CPS), 2004 U.S. Dist. LEXIS 26013, at
*28 (E.D.N.Y. July 22, 2004) (citing <u>Greater N.Y. Auto Dealers</u>
<u>Ass'n v. Envtl. Sys. Testing, Inc.</u>, 211 F.R.D. 71, 77 (E.D.N.Y.
2002)).  "The granting of [such] a motion . . . is within the
discretion of the district court."  <u>Szarmach v. Sikorsky</u>
<u>Aircraft</u>, No. 01cv699 (PCD), 2001 U.S. Dist. LEXIS 25744, at *8-9
(D. Conn. Sept. 28, 2001).

## III. Discussion

    Defendants base their motion for more definite statement on
three general deficiencies in the Amended Complaint, seeking
clarification of: (1) when the alleged wrongful conduct occurred;
(2) what conduct of the defendants violated which specific
constitutional rights; and (3) which individual defendants were
responsible for the wrongful conduct.  (<u>See</u> Def. Mem. [Doc. #14-
1] at 7.)  They maintain that the majority of paragraphs in the
Amended Complaint are "so vague and ambiguous with regard to what
charges are made as to which defendants and based on what
conduct, that the defendants cannot reasonably be required to
frame a responsive pleading."  (Def. Mem. at 2.)  In support,
defendants reference what they perceive to be broad, conclusory
language such as that in Paragraph 53 of Count Two:

        Defendants were personally involved in and directly
        responsible for the violations of Plaintiff's rights
        by: direct involvement, after learning of said
        violations failing to remedy; created and maintained
        [sic.] policies, practices and customs that permitted
        such unlawful employment practices to occur; grossly

4

> negligent and deliberately indifferent [sic.] in their
> supervision, training and discipline of subordinate
> employees of the Defendant, thereby permitting the
> continuation of the wrongs suffered by Plaintiff.

(Am Compl. ¶ 19.)

The plaintiff explains each defendant's role and the structural connections among them in the "Parties" section. (<u>See id.</u> ¶¶ 7-16.[2])  Paragraph 7, for example, alleges:

> Commissioner Lantz, and Deputy Commissioner Murphy and
> Wardens Gillis, Ford and Ricks, were the Commanding
> Officers and supervisors of the other named individual
> Defendants. . . .  They were also responsible, by law,
> for establishing, enforcing the rules and regulations,
> policies and directives of the State of Connecticut
> Department of Correction. . . .  They were also
> responsible for ensuring that the DOC and its
> individual facilities are operated free from racial and
> gender discrimination and/or retaliation. . . . Further
> they were in a position to remedy an acts of
> discrimination and retaliation . . .

The individual defendants are all sued in their official and individual capacities.  Several paragraphs do individuate or reference the defendants in sub-groupings: DOC (¶¶ 9, 13); DOC and Lantz (¶ 65); Lantz, Murphy and the wardens (¶¶ 7, 30, 52); the wardens (¶ 12); the majors (¶¶ 8, 11); and the "individual defendants," presumably referring to all defendants except DOC (¶¶ 14, 48, 49, 51).

The factual allegations in the Amended Complaint detail the hostile work environment plaintiff experienced, referencing the

---

[2] The paragraphs were erroneously numbered on pages 8 and 9 of the Complaint.  There are two paragraphs numbered "14" and two numbered "16."

5

profanities, racial slurs, and physical threats leveled at him by
his fellow correctional officers (see Am. Compl. ¶¶ 21, 22, 33),
of which the individual defendants were allegedly aware and
encouraged (see, e.g., id. ¶¶ 30, 52).  Vaden claims retaliation
by the defendants as: following a physical encounter with other
correctional officers, which resulted in disciplinary actions, he
"was subjected to a compulsory administrative transfer" (id. ¶
25), "subjected to statements indicating negative performance"
(id. ¶ 30), and "subjected to disparate treatment, disparate
discipline, and disparate investigation of his complaints" (id.).
On another occasion, according to plaintiff, "[d]efendants
purposely caused Plaintiff to be required to conduct training on
workplace violence to those [correctional officers] whom it knew
to be already hostile to him and who had displayed racist conduct
toward Plaintiff," and then disciplined him when he left the
training due to those officers' disruptive mocking and refusal to
participate.  (Id. ¶ 31.)  He also claims having been unfairly
evaluated and "denied the opportunity to fill th[e] position [of
phone monitor]" on the basis of his race and color.  (See id. ¶¶
37, 38.)  In many of these and other paragraphs constituting the
"Statement of Facts" section of the Amended Complaint, plaintiff
does not separate out the allegations by defendant or specify
what is meant by "defendants."  (See, e.g., ¶¶ 15-19, 31-34, 38-
43, 53-55, 57, 59, 61, 64, 67.)

6

**(A) When the alleged wrongful conduct occurred**

Defendants first request that plaintiff clarify the timing of the events grounding his claims by alleging specific dates. However, the "Statement of Facts" in the Amended Complaint is replete with dates outlining the allegedly discriminatory occurrences.  (See, e.g., ¶¶ 20, 23, 28-32, 34, 37.)  Thus, the Motion for More Definite Statement will be denied on this ground.

**(B) What conduct of the defendants violated which specific constitutional rights**

The Court finds that plaintiff has set out in sufficient detail the conduct that allegedly violated his constitutional rights.  Count Two, alleging §§ 1981 and 1983 violations, alleges that "[a]ll of the Individual Defendants were directly involved as the initiator of said incidents of discrimination and retaliation" (Am. Compl. ¶ 51), thereby violating his "equal protection and due process" rights (id. ¶ 58).  Plaintiff alleges that these individual defendants inter alia encouraged subordinates to use racial slurs (id. ¶ 55), created policies that allowed discriminatory practices to continue (id. ¶ 53), and denied plaintiff equal opportunities on account of his race (id. ¶ 61).  Further detail as to the nature of the conduct can be obtained through discovery.

**(C) Which individual defendants were responsible for the wrongful conduct**

In challenging the individual defendants' conduct in Count

Two,[3] "[p]laintiff should always specify the particular defendant to which he is referring."  Caraveo v. Nielsen Media Research, Inc., No. 01 Civ. 9609 (LBS), 2002 U.S. Dist. LEXIS 6026, at *8-9 (S.D.N.Y. Apr. 8, 2002); see also In re Methyl Tertiary Butyl Ether Prods. Liability Litigation, 233 F.R.D. 133, 135 (S.D.N.Y. 2005) (approving Caraveo for requiring that the plaintiff in a multi-defendant suit identify which of its claims apply to each defendant, for the reason that, "in an employment discrimination case, differing conduct on the part of each defendant may give rise to different causes of action").

The Court finds that plaintiff has sufficiently delineated to which defendant he attributes particular allegedly unconstitutional conduct, and in what capacity — official or individual.  First, Count Two alleges that all of the individual defendants inter alia "were directly and personally involved as the initiator of said incidents of discrimination and

---

[3] Although plaintiff's Fourth and Fifth Counts also generically refer to "defendants," this imprecision fails to recognize that Title VII and CFEPA claims are not cognizable against individuals.  See Schiano v. Quality Payroll Sys., 445 F.3d 597, 608 (2d Cir. 2006) ("[A]n individual defendant cannot be held personally liable under Title VII.") (citing Tomka v. Seiler Corp., 66 F.3d 1295, 1313-14 (2d Cir. 1995); Edwards v. New Opportunities, Inc., No. 05CV1238 (JCH), 2006 U.S. Dist. LEXIS 40121, at *11-12 (D. Conn. June 16, 2006) ("Title VII permits a plaintiff to sue her employer, but not individual supervisors or other employees. . . .  Similarly, the Connecticut Supreme Court has found that there is no individual liability under the parallel provision of the CFEPA.") (citing Perodeau v. City of Hartford, 792 A.2d 752 (Conn. 2002)).

retaliation" (Am. Compl. ¶ 51), "failed and refused to take action to investigate, prevent or remedy the violations" (id. ¶ 53), "permitted a racially hostile and offensive work environment" (id. ¶ 54), and "denied and deprived Plaintiff of equal opportunities because of Plaintiff's race" (id. ¶ 61). Second, Count Two separates out these individual defendants, alleging that "Defendants Lantz, Murphy, Gillis, Ford, and Ricks knew or reasonably should have known . . . of the discriminatory and retaliatory acts by Majors Bourne, Foley and Alves. . . . [and] "knew or should have known that the acts of Majors Bourne, Foley and Alves were sufficiently severe and pervasive as to create a hostile work environment for Plaintiff." (Id. ¶ 52.) Thus, as currently pleaded, plaintiff has met his Rule 8(a) burden of putting each defendant on notice as to the §§ 1981, 1983 claims against him or her. Defendant's Motion will therefore be denied on this ground.

## IV. Conclusion

Accordingly, defendants' Motion for a More Definite Statement [Doc. # 14] is DENIED, pursuant to Fed. R. Civ. P. 12(e).

IT IS SO ORDERED.

/s/

_____

JANET BOND ARTERTON, U.S.D.J.

**Dated at New Haven, Connecticut, this 27th day of November, 2006.**

9