REDINNO L. S. VADEN,
        *Plaintiff*,

        *v.*

STATE OF CONNECTICUT,
CONNECTICUT DEP'T OF CORRECTIONS,
THERESA LANTZ, BRIAN MURPHY,
WALTER FORD, LORI RICKS, ROBERT GILLIS,
ROBIN BOURNE, JAMES FOLEY, and
JOHN ALVES,
        *Defendants.*

No. 06-cv-71 (JBA)

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Redinno Vaden filed this suit against his former employer, the

Connecticut Department of Corrections, to seek redress for what he alleges to be racial

discrimination and a hostile work environment culminating in his termination. The

defendants have moved for summary judgment on all counts, and for the reasons below,

their motion will be granted.

## I.      Facts and Background

In his fourth amended complaint, Mr. Vaden advances three claims: a Fourteenth

Amendment due process and equal protection claim under 28 U.S.C. §§ 1981 and 1983

(Count 2); a Title VII claim (Count 3); and a claim under the Connecticut Fair

Employment Practices Act (Count 4).  In Count 1, Mr. Vaden purports to bring a claim

for declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201.  However,

"[t]he Declaratory Judgment Act does not expand jurisdiction . . . nor does it provide an

independent cause of action.  Its operation is procedural only – to provide a form of relief

previously unavailable."  *In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir.

1993) (internal citations omitted).  Since plaintiff seeks declaratory relief on all counts in

the "Relief Demanded" section of his fourth amended complaint, and because his Count

One is not predicated on any underlying cause of action, summary judgment on Count

One is appropriate and will be granted.


### A.    Timeliness of claims

In his complaint and opposition to summary judgment, Mr. Vaden recites a litany

of events stretching back to 2002, but the relevant statutes of limitations controlling his

§ 1983 equal protection and due process and Title VII discrimination and hostile work

environment claims restrict the summary judgment analysis of actionable conduct to

more recent events.

Because 28 U.S.C. § 1983 contains no express time limit for bringing claims, the

Supreme Court directs courts to apply the statute of limitations applicable to personal

injury claims in the state in which the tort is alleged to have occurred.  *Wilson v. Garcia*,

471 U.S. 261, 280 (1985).  In Connecticut, the appropriate statute of limitation is found in

Conn. Gen. Stat. § 52-577, which sets a three-year limit for tort claims, *Lounsbury v. Jeffries*, 25 F.3d 131, 134 (2d Cir. 1994).

With respect to a Title VII claim, an administrative charge must be filed with the Equal Employment Opportunity Commission "within one hundred and eighty days after the alleged unlawful employment practice occurred," 42 U.S.C. § 2000e-5(e)(1), but the filing deadline is extended to 300 days in states, such as Connecticut, which have agencies "with authority to grant or seek relief from such practice." *Id.* Following the release of jurisdiction from the agency (also known as a "right to sue" letter), an individual alleging a Title VII grievance may file a civil action "within ninety days." 42 U.S.C. § 2000e-5(f)(1).

Mr. Vaden filed this action on January 13, 2006, and dual filed his Title VII complaint with the Connecticut Commission on Human Rights and Opportunities (CHRO) on July 13, 2006, receiving a release of jurisdiction on July 3, 2007.[1] Therefore, any conduct or actions by defendants alleged to give rise to § 1983 liability occurring before January 13, 2003 are time-barred, as are any actions on which his Title VII claim is premised occurring before September 16, 2005, 300 days prior to his administrative filing. Mr. Vaden contests this conclusion, arguing very briefly that "[t]he Second Circuit has permitted continuing civil rights violations to be remedied under the continuing violation doctrine," Pl.'s Opp. to Summ. J. at 14. He does not specify whether his

---

[1] Defs.' Mot. for Summ. J., Ex. 91. This odd inverse sequence of filings has not been challenged by defendants.

continuing violation theory applies to his § 1983 claim, his Title VII claim, or both.

A continuing course of conduct may toll the statute of limitations on a plaintiff's Title VII & § 1983 claims, where the alleged violation is "'composed of a series of separate acts that collectively constitute one unlawful employment practice.'" *Washington v. County of Rockland*, 373 F.3d 310 (2d Cir. 2004) at 318 (quoting *N'tl Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 111 (2002). A string of incidents which are each a "discrete act" or "a single completed action" does not constitute a continuing violation which tolls the statute of limitations. *Elmenayer v. ABF Freight Sys.*, 318 F.3d 130, 135 (2d Cir. 2003) (internal quotation omitted). "Like too many legal doctrines, the 'continuing violation' doctrine is misnamed . . . [t]he office of the misnamed doctrine is to allow suit to be delayed until a series of wrongful acts blossoms into an injury on which suit can be brought. It is thus a doctrine not about a continuing, but about a cumulative, violation." *Limestone Dev. Corp. v. Vill. of Lemont*, No. 07-1438, 2008 U.S. App. LEXIS 6891 (7th Cir. Apr. 1, 2008) (internal citations omitted).

Mr. Vaden does not address how the occurrences catalogued in his complaint collectively constitute one cumulative violation of his rights, but instead simply asserts that the series of events in the complaint "establish specific repeated instances where discriminatory acts by Defendants were permitted over a span of years during Plaintiff[']s employment." Pl.'s Opp. to Summ. J. at 15. The only pre-January 13, 2003 event mentioned in the complaint – the July 2002 altercation between plaintiff and a

number of other corrections officers in front of inmates – is a self-contained event, unconnected to Vaden's later travails.  Although the plaintiff alleges that the Department's response to this incident "subjected [plaintiff] to disparate and more severe treatment in the discipline accorded him based upon his race and color,"  Pl.'s Opp. to Summ. J. at 12, the July 2002 incident is unconnected to Mr. Vaden's other § 1983 allegations.  Thus, it is time-barred as a basis for liability in Count 2.  A similar result is required for the allegations which predate September 16, 2006 advanced as a basis for Mr. Vaden's Title VII claim.[2]

### B.     The plaintiff's non-compliance with Local R. 56

In their motion for summary judgment, the defendants have submitted a statement of material facts as to which they contend there is no genuine issue remaining for trial resolution.  In his opposition, however, Mr. Vaden has not countered the defendants' contentions by specifically admitting or denying them as required by Local Rule 56(a)(2), but has countered with a different list of facts which he asserts to be in dispute.  Because the plaintiff has not admitted or denied the defendant's asserted uncontroverted facts,  the defendants urge the Court to take the plaintiff's failure to rebut their statement of material facts as admissions based on which summary judgment

---

[2] By bringing the 2002 CHRO complaint based upon the occurrences which he now claims as constituting the continuing violation, Mr. Vaden necessarily acknowledges those occurrences as completed and actionable as of the time of his administrative complaint.

should be granted in their favor.

Local Rule 56(a)(1) requires that a party moving for summary judgment annex to its motion a document which "sets forth in separately numbered paragraphs . . . a concise statement of material fact as to which the moving party contends there is no genuine issue to be tried." The party opposing summary judgment is in turn obliged under Local Rule 56(a)(2) to include in its opposition a document which "states in separately numbered paragraphs . . . and corresponding to the paragraphs contained in the moving party's Local Rule 56(a)(1) Statement whether each of the facts asserted by the moving party is admitted or denied." The non-moving party is further obliged to submit a separate list "of each issue of material fact as to which it is contended there is a genuine issue to be tried," *id.* All statements of fact submitted under Local Rule 56 are subject to the requirement that each fact "must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial," Local R. 56(a)(3).

The requirement that Local R. 56(a)(1) statements cite the record, and be responded to as either admitted or denied, is grounded in the expectation that "[a] party responding to a motion for summary judgment presumably has conducted discovery and should have a reasonable, factually supported basis to admit or deny any factual assertions made in the case," *Hogan v. Conn. Judicial Branch*, 220 F. Supp. 2d 111, 115 (D. Conn. 2002). The penalty for failing to properly and completely respond to the

moving party's Local R. 56(a)(1) statement may include the moving party's facts being "deemed admitted," Local R. 56(a)(2). *See, e.g., Roberts v. Dominion Resources, Inc.*, No. 06-cv-1598, 2008 U.S. Dist. LEXIS 31183 at *1-2 (D. Conn. Apr. 16, 2008) ("Plaintiff has failed to submit a statement of facts in compliance with Local Rule 56. Accordingly, the Court assumes that plaintiff does not dispute the facts presented by defendants."); *Eiden v. McCarthy*, 531 F. Supp. 2d 333, 338 (D. Conn. 2008) (deeming facts which plaintiff failed to specifically admit or deny to have been admitted). However, even where a non-moving party's failure to comply with Local Rule 56 would result in the admission of facts, this Court must be guided by the substance of the record submitted in support and "may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56[] statement," *Vt. Teddy Bear Co. v. 1-800 BEARGRAM Co.*, 373 F.3d 241, 244 (2d Cir. 2004), lest the Court "derogate the truth-finding functions of the judicial process by substituting convenience for facts." *Giannullo v. City of New York*, 322 F.3d 139, 143 (2d Cir. 2003).

Here, Mr. Vaden has failed to comply with Local R. 56(a)(2) and has submitted no statement which "states in separately numbered paragraphs . . . and corresponding to the paragraphs contained in the moving party's Local Rule 56(a)(1) Statement whether each of the facts asserted by the moving party is admitted or denied." Instead, he has submitted a list of 106 items which bear little correspondence to those contained in the defendants' Local R. 56(a)(1) statement, are not arranged with apparent ordering, and, in

part, advance only conclusory contentions.  In short, the plaintiff has not complied with Local Rule 56(a)(2)'s dictate that he *both* admit or deny the defendant's statement of undisputed facts in the order in which the defendants have presented them, *and* provide the Court with a list of material facts which he believes to be in contention.  The facts which the defendants assert to be undisputed will therefore be taken as true if supported by the record.

### C.  The factual background

Mr. Vaden is an African-American man who was employed by the Connecticut Department of Corrections as a correctional officer beginning in 2001.  The series of incidents leading up to his discharge began in 2003, when Mr. Vaden came into conflict with a white officer, Michael Tuthill, at the Gates Correctional Institution in Niantic, Connecticut.  The Department noted the two officers' mutual ill will when, following an incident in which the two bumped into each other outside of roll call,[3] the Department placed both men on administrative leave, and then separated them by temporarily assigning Mr. Vaden to York Correctional Institution, an all-female facility also located in Niantic.[4]

After a few months at York, Mr. Vaden was transferred back to Gates, a decision

---

[3] Defs.' Mot. for Summ. J., Ex. 18.

[4] *Id.*

which he unsuccessfully protested as a return to a hostile work environment.[5]  On

November 28, 2003, shortly after arriving back at Gates, Mr. Vaden submitted an

incident report complaining that he "experienced extreme humiliation, just from the

return [to Gates] alone,"[6] without specifying what occurrences at Gates had humiliated

him.[7]

Following two more run-ins with Tuthill during which both Vaden and Tuthill

were determined to have broken the Department's code of conduct,[8] a supervisor noted

that in an incident report that "[t]he ongoing issues between Officers Vaden and Tuthill

are escalating.  Immediate formal action is necessary."[9]  A Department physician who

examined Mr. Vaden after the incidents found him fit for duty, but recommended that

Vaden not be assigned back to Gates "because of problems that he has encountered

---

[5] *Id.*, Exs. 23, 24.

[6] Defs.' Mot. for Summ. J., Ex. 25.

[7] Mr. Vaden requested a permanent transfer back to York, which was granted in January 2004; but then declined the transfer and remained at Gates.  *Id.*, Ex. 28.

[8] On February 16, 2004, Mr. Vaden was cited for leaving his post after he abruptly ended a training class on workplace violence which he had been assigned to lead.  Vaden alleges that Tuthill and Officer William Burnham had been belligerent and disruptive during the training; Tuthill and Burnham alleged that Vaden had badgered them with confrontational questions.  Ultimately, the Department determined that Vaden had broken departmental rules by abandoning his post, and that Burnham had done so by being discourteous to Vaden.  Defs.' Mot. for Summ. J., Exs. 29, 39 at 15.  On February 18, 2004, Mr. Vaden alleged that Tuthill brought a firearm to work to shoot him.  Tuthill had permission to bring the weapon to Gates, and the Department's investigation was unable to determine if Tuthill had, as Vaden alleged, threatened to use the gun.  Although the Department determined that Vaden had violated the code of conduct by abandoning his post against an order not to do so, and Tuthill's permission to bring a firearm to work was revoked, neither officer was punished for the incident.  Defs.' Mot. for Summ. J., Exs, 31, 41.

[9] Defs.' Mot. for Summ. J., Ex. 31.

there."[10]  The Department acted upon the physician's recommendation, albeit a year

later, and both Vaden and Tuthill were permanently reassigned: Mr. Vaden was

transferred back to York, and Mr. Tuthill to the Corrigan-Radgowski Correctional

Center in Uncasville, Connecticut.[11]

At York, Mr. Vaden filed a number of incident reports alleging that his new chain

of command was harassing him in the same manner as he claims to have been harassed at

Gates, but without specifying what occurrences he deemed harassing.[12]  He also came

into conflict with his new co-workers, garnering reprimands for insubordination and

inappropriate behavior towards fellow officers.[13]  In April 2006, a Department supervisor

wrote to York Warden Lori Ricks, asking that the Department punish Mr. Vaden for his

misbehavior and expressing concern about Mr. Vaden's "continued threatening behavior

and intimidating presence."[14]  An investigation ensued, and in May 2006, the

Department's security division recommended that Mr. Vaden be suspended for ten days,

reexamined for fitness for duty, and offered a "last chance stipulation" instead of being

---

[10] *Id.*, Ex. 38.

[11] Defs.' Mot. for Summ. J., Exs. 44, 45.

[12] *Id.*, Exs. 47, 57.

[13] *Id.*, Exs. 51 (dispute over a handicapped parking space), 60 (speaking to a lieutenant in a hostile manner), 61 (yelling at inmates in the dining hall).

[14] *Id.*, Ex. 69.

fired.[15]  Mr. Vaden refused the "last chance" offer,[16] and was terminated on June 23,

2006.[17]


### D. Summary judgment standard

Summary judgment is appropriate under Federal Rule of Civil Procedure 56(c)

when the moving party establishes that there is no genuine issue of material fact to be

resolved at trial and that the moving party is entitled to judgment as a matter of law.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  In this

inquiry, "[o]nly disputes over facts that might affect the outcome of the suit under the

governing law will properly preclude the entry of summary judgment."  *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  "Where

the record taken as a whole could not lead a rational trier of fact to find for the

nonmoving party, there is no genuine issue for trial."  *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

In moving for summary judgment against a party who will bear the ultimate

burden of proof at trial, the movant's burden of establishing that there is no genuine

issue of material fact in dispute will be satisfied if he or she can point to an absence of

---

[15] *Id.*, Ex. 78.

[16] *Id.*, Ex. 97 app. A at 117.

[17] *Id.*, Ex. 85.

evidence to support an essential element of the non-moving party's claim. *Celotex*, 477 U.S. at 322-23. This means that "[a] defendant need not prove a negative when it moves for summary judgment on an issue that the plaintiff must prove at trial," but "need only point to an absence of proof on plaintiff's part, and, at that point, plaintiff must 'designate specific facts showing that there is a genuine issue for trial.'" *Parker v. Sony Pictures Entm't, Inc.*, 260 F.3d 100, 111 (2d Cir. 2001) (quoting *Celotex*, 477 U.S. at 324); *see also Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1223-1224 (2d Cir. 1994) ("[T]he moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case.").

The non-moving party, in order to defeat summary judgment, must then come forward with evidence that would be sufficient to support a jury verdict in his or her favor. *Anderson*, 477 U.S. at 249. In making this determination, the Court draws all reasonable inferences in the light most favorable to the party opposing the motion. *Matsushita*, 475 U.S. at 587. However, a party opposing summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading," Fed. R. Civ. P. 56(e), and "some metaphysical doubt as to the material facts" is insufficient. *Id.* at 586 (citations omitted).

### E.      Proper defendants

#### 1.      The State of Connecticut and the Dep't of Corrections

Mr. Vaden has named the State of Connecticut and the Department of Corrections as defendants in his suit, which these defendants object to as barred by the State's Eleventh Amendment sovereign immunity.  The plaintiff does not dispute that the Eleventh Amendment bars suit against a State in federal court absent the State's consent, *Edelman v. Jordan*, 415 U.S. 651, 662-663 (1974), and therefore all claims against the State of Connecticut are dismissed.

With respect to the defendant Department of Corrections, the Second Circuit has made clear that "[a]n official arm of a state enjoys the same Eleventh Amendment immunity from suit in federal court as is enjoyed by the state itself."  *Posr v. Court Officer Shield # 207*, 180 F.3d 409, 414 (2d Cir. 1999).  Although the Second Circuit has created a six-factor test which may be used to determine whether or not a given agency is an arm of the state, *see McGinty v. New York*, 251 F.3d 84, 95-96 (2d Cir. 2001), here, there is no basis for disputing that the Department of Corrections is an arm of the State of Connecticut *see, e.g.,* Conn. Gen. Stat. § 18-80 ("the Governor shall appoint a Commissioner of Correction who shall be the administrative head of the department"); Conn. Gen. Stat. § 18-78a(a)(1) (providing that "[t]he provisions of [the Connecticut Uniform Administrative Procedure Act] shall apply to the Department of Correction"),

and the plaintiff does not dispute this point.[18]  As an arm of the state, the Department

enjoys the same Eleventh Amendment immunity against suit in federal court, and the

plaintiff's claims against the Department are accordingly dismissed.


## 2.        Defendant Stephen Bates

Department of Corrections Captain Stephen Bates was first named as a

defendant in Mr. Vaden's fourth amended complaint, filed October 25, 2007.  Because

the record contains no documentation of service ever having been effected upon Mr.

Bates, the defendants move for his dismissal from this action.

Fed. R. Civ. P. 4(c)(1) mandates that "[a] summons must be served with a copy of

the complaint," and that the summons must "be directed to the defendant," Fed. R. Civ.

P. 4(a)(1)(B).  It is the plaintiff's responsibility to serve each defendant with a summons

and complaint in a timely manner, for "[i]f a defendant is not served within 120 days

after the complaint is filed, the court . . . must dismiss the action without prejudice

against that defendant or order that service be made within a specified time."  Fed. R.

Civ. P. 4(m).  This rule applies with equal force to a defendant added in an amended

complaint.  *E.g.*, *Perez v. New York City Police*, No. 00-0016, 2000 U.S. App. LEXIS 29314

at *5 (2d Cir. Nov. 13, 2000) (summary order).

Although Rule 4(m) specifies that a court "must extend the time for service for an

---

[18] *See* Pl.'s Opp. to Summ. J. at 1 ("[T]he Department of Correction was established by the General
Assembly . . . into a cabinet level agency headed by a commissioner who is appointed by the Governor").

appropriate period" if the plaintiff "shows good cause for the failure," Mr. Vaden makes no attempt to explain his failure to serve Mr. Bates, instead asserting, without citation or explanation, that Mr. Bates "is already a named Defendant in his official capacity as a result of service on the State of Connecticut," Pl.'s Opp. at 13. Mr. Vaden's explanation that Conn. Gen. Stat. § 52-64, permitting the Attorney General of Connecticut to accept service "in any civil action . . . against any officer, servant, agent or employee of the state,"[19] satisfies plaintiff's service obligations is unavailing where the record shows no evidence of any "service on the State of Connecticut" after the filing of the fourth amended complaint in which Mr. Bates was first named as a party. There is similarly no documentation of any service of a summons directed to Mr. Bates – in either his official or individual capacities – as required by Rule 4. Therefore, Mr. Bates will be dismissed from this case.

## III.    The Connecticut Fair Employment Practices Act claim

In Count Four, Mr. Vaden alleges that the defendants violated the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60 *et seq*. The defendants have moved for summary judgment on this count on the basis that the Eleventh Amendment forbids Mr. Vaden from bringing a CFEPA claim against a state agency in federal court.

---

[19] Fed. R. Civ. P. 4(e)(1) permits an individual sued in any judicial district of the United States to be served according to methods of service of process acceptable under relevant state law.

The Eleventh Amendment to the United States Constitution bars the federal courts from entertaining suits "commenced or prosecuted against one of the United States by Citizens of another State," and this prohibition has been interpreted to extend to suits against states by their own citizens. *Hans v. Louisiana*, 134 U.S. 1, 15 (1890). Of course, a state may waive its Eleventh Amendment immunity to suit in federal court, provided the state does so unequivocally, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984), but state statutory provisions consenting to suit in state court, like CFEPA,[20] are not waivers of Eleventh Amendment immunity from suit in federal court. *Smith v. Reeves*, 178 U.S. 436, 441 (1900) ("A state does not consent to suit in federal court by consenting to suit in the courts of its own creation").

Contrary to Mr. Vaden's argument that federal supplemental jurisdiction exists over his CFEPA claim, the Eleventh Amendment necessarily also bars exercise of federal statutory supplemental jurisdiction over suits against a State. "The Eleventh Amendment is an explicit limitation of the judicial power of the United States. It deprives a federal court of power to decide certain claims against States that otherwise would be within the scope of Art. III's grant of jurisdiction." *Pennhurst*, 465 U.S. at 119-120. The Supreme Court has explicitly rejected the contention that 28 U.S.C. § 1367(a) functions, as plaintiff

---

[20] CFEPA provides that "[a]ny person who has timely filed a complaint with the Commission on Human Rights and Opportunities . . . and who has obtained a release from the commission . . . may also bring an action *in the superior court for the judicial district in which the discriminatory practice is alleged to have occurred* or in which the respondent transacts business, except any action involving a state agency or official may be brought in the superior court for the judicial district of Hartford." Conn. Gen. Stat. § 46a-100 (emphasis added).

implies, as an abrogation of sovereign immunity permitting otherwise-barred claims to be brought in federal court via supplemental jurisdiction. *Raygor v. Regents of the Univ. of Minn.*, 534 U.S. 533, 541-542 (2002) ("[W]e cannot read § 1367(a) to authorize district courts to exercise jurisdiction over claims against nonconsenting States, even though nothing in the statute expressly excludes such claims. Thus . . . we hold that § 1367(a)'s grant of jurisdiction does not extend to claims against nonconsenting state defendants"). Therefore, summary judgment on Count Four will be granted.

## IV.     The § 1983 and Title VII claims

Mr. Vaden's remaining counts allege that he was discriminated against on the basis of his race, in violation of the equal protection clause of the Fourteenth Amendment (Count 2),[21] and that he was subjected to a hostile work environment on the same discriminatory basis, in contravention of Title VII (Count 3). The Second Circuit has held that where a plaintiff alleges both an equal protection and Title VII violation arising from state action, "[t]he elements of one are generally the same as the elements of

---

[21] In his complaint, Mr. Vaden also appears to claim that the defendants violated his Fourteenth Amendment right to due process, Fourth Amended Compl. at ¶ 66. However, beyond mentioning the phrase "due process" once in Count 2, Mr. Vaden offers no factual allegations showing the nature of the due process violation claimed (substantive or procedural), and which, if any, of the defendants' actions violated his due process rights. In his opposition to summary judgment, Mr. Vaden similarly fails to address the nature of the due process violation which he alleges to have occurred, as well as any facts from which the nature of the alleged violation can be ascertained, *see* Pl.'s Opp. to Summ. J. at 20-22. Accordingly, the plaintiff's due process claim will be considered abandoned. *E.g., Packer v. Sn Servicing Corp.*, No. 04-cv-1506, 2008 U.S. Dist. LEXIS 39584 (D. Conn. May 16, 2008) ("It is well settled that a failure to brief an issue is grounds to deem the claim abandoned") (internal quotation omitted).

the other and the two must stand or fall together," *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004). When analyzing such merged claims, courts use the burden-shifting framework of Title VII claims. *Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998).

Under this burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), it is Mr. Vaden's burden to establish a prima facie case of discrimination on account of race. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000). To do so, he must prove: (1) membership in a protected class; (2) qualification for his position; (3) an adverse employment action; and (4) circumstances giving rise to an inference of discrimination on the basis of his membership in the protected class. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).[22]

As to Mr. Vaden's prima facie case, the defendants do not dispute that Mr. Vaden is a member of a protected group, that he was qualified to perform his job (with limited exceptions), and that he suffered adverse employment action in the form of discharge from his job. They claim that the circumstances of his discharge do not give rise to an inference of discrimination based on race.

---

[22] If the plaintiff establishes a prima facie case, the burden shifts to the defendants to articulate "a legitimate, nondiscriminatory reason" for the adverse employment actions, *Reeves v. Sanderson Plumbing*, 530 U.S. 133, 142 (2000) (internal citations, quotations, and alterations omitted). The defendants' burden is satisfied if the proffered evidence "taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action." *Schnabel v. Abramson*, 232 F.3d 83, 88 (2d Cir. 2000) (internal quotation omitted). Finally, the burden shifts back to the plaintiff , who must "come forward with evidence that [defendants'] proffered, non-discriminatory reason is a mere pretext for actual discrimination." *Weinstock*, 224 F.3d at 42.

As proof of racial discrimination, Mr. Vaden claims that certain white Department employees were either reprimanded less severely than he or not at all for infractions of the Department's code of conduct, and more generally alleges that the Department did not fire white employees for engaging in the behaviors for which he was fired. The undisputed record does not support plaintiff's contentions. The defendants have submitted documentation showing that a number of the white employees claimed by the plaintiff as having escaped punishment were, in fact, disciplined by the Department: Officer Leo Perry, a white man who Vaden alleged was "videotaped sleeping on the job" yet "still has his job"[23] was terminated on July 17, 2007 for being "inattentive while on duty." Officer Paul Bard, a white man who Vaden said escaped any punishment for "[s]oliciting prostitutes, DWI, driving without a license" was, in fact, reprimanded for misrepresenting "an arrest which occurred off-duty" as being for a motor vehicle infraction rather than for solicitation.[24] Lieutenant Brian White, a black male who Vaden asserts was "a dirty staff member" who was not punished for having his arm around a female inmate in a break room, was in fact terminated by the Department on August 7, 2006 for "showing favoritism to an inmate."[25] As to Mr. Vaden's more general contention that the Department did not terminate white employees for the infractions

_____

[23] Vaden Dep. (Pl.'s Opp. to Summ. J., Ex. A) at 152:4-14.

[24] Callahan Aff. (Def.'s Mot. for Summ. J., Ex. B) at ¶ 21(f).

[25] Callahan Dep. app. 6.

for which he was terminated, the Department has submitted a list of employees at York who have been terminated for violating the employee conduct rule which Mr. Vaden contravened, administrative directive 2.17: of these, seven are white and two are black.[26]

The Department does not specify whether the infractions for which Perry, Bard, and White were terminated were precisely the same instances referred to by Mr. Vaden or whether the individuals were terminated for different or cumulative instances of the same behavior identified by the plaintiff. However, in his opposition to summary judgment, Mr. Vaden does not rebut the defendants' evidence, offer any personal knowledge of the circumstances of his white comparators' infractions, and does not explain how his evidence – consisting exclusively of his deposition testimony and the affidavit which he filed in connection with a 2002 CHRO complaint – establishes any inference that Mr. Vaden's track record of friction with co-workers and superiors can be explained by racial bias. Absent any inference that the Mr. Vaden's termination was motivated by racial discrimination, plaintiff has failed to establish his prima facie case and summary judgment will be granted to the defendants on Mr. Vaden's § 1983 and Title VII discrimination claims.

---

[26] Callahan Dep. at ¶ 18.

**V.      The § 1981 claim**

Finally, Mr. Vaden advances a claim under 42 U.S.C. § 1981.  The defendants have moved for summary judgment on the basis that, in their view, § 1983 is the exclusive remedy against state actors for Fourteenth Amendment violations.

Section 1981 of title 42 provides, in relevant part, that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." Several courts of appeal have held that § 1981 cannot be used against state actors, but that plaintiffs must assert claims of racial discrimination via § 1983.  *See Dennis v. County of Fairfax*, 55 F.3d 151 (4th Cir. 1995); *Felton v. Polles*, 315 F.3d 470, 481-483 (5th Cir. 2002); *Artis v. Francis Howell North Band Booster Ass'n, Inc.*, 161 F.3d 1178 (8th Cir. 1998); *Butts v. County of Volusia*, 222 F.3d 891 (11th Cir. 2000).  The Ninth Circuit has reached the opposite conclusion, holding that § 1981 can provide a separate cause of action against state actors, *Fed. of African Am. Contractors v. City of Oakland*, 96 F.3d 1204 (9th Cir. 1996), and the Second Circuit has not spoken on the question.  On the record before the Court, there is no need to reach any conclusion about whether § 1981 may be used against state actors, because Mr. Vaden's § 1981 claim would suffer from the same infirmities which doom his § 1983 claim.  In order to establish a § 1981 liability, a plaintiff "must show, *inter alia*, that the defendant discriminated against him on the basis

of race, that that discrimination was intentional, and that the discrimination was a 'substantial' or 'motivating factor' for the defendant's actions," *Tolbert v. Queens College*, 242 F.3d 58, 69 (2d Cir. 2001) (internal quotations and citations omitted).  Here, Mr. Vaden's deposition testimony offered in support of his § 1983 claim fails to demonstrate that he was terminated under circumstances raising an inference of racial bias, and he adduces no additional evidence to meet his burden of showing intentional discrimination to prove his § 1981 claim.  Therefore, summary judgment will be granted to the defendants on Mr. Vaden's § 1981 claim.

## V.       Conclusion

For the reasons set forth above, the defendants' motion for summary judgment [Doc. # 49] is GRANTED.  The Clerk is directed to close this case.

IT IS SO ORDERED.

/s/

_____
JANET BOND ARTERTON, U.S.D.J.

Dated at New Haven, Connecticut, this 30th day of May, 2008.